# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: RANCHER ENERGY, CORP., | ) Case No. 09-32943 MER |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED DECEMBER 13 , 2010

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. § l01 *et seq.*, Rancher Energy Corp., debtor and debtor in possession in the above-captioned bankruptcy case, hereby proposes the following First Amended Plan of Reorganization ("Plan" or "Amended Plan").  The Debtor is the Plan proponent within the meaning of 11 U.S.C. § 1129. A detailed discussion of the Debtor's history, business, historical financial information and other pertinent information, as well as a summary and analysis of this Plan, are set forth in the First Amended Disclosure Statement ("Disclosure Statement")  filed with this Plan.

## ARTICLE 1
## GENERAL

**A.  Definitions**

The following terms, when used in this Plan or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of this Plan, shall have the respective meanings hereinafter set forth.

**1.1.** "Administrative Claim" means a Claim for costs and expenses of administration allowed under §§ 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Bankruptcy Case, (c) any Professional Fee Claims, and (d) any fees or charges assessed against the Debtor's Estate under § 1930, chapter 123, title 28, United States Code.

**1.2.** "Adversary Proceeding" means that action styled adversary proceeding No. 10-01173-MER *Rancher Energy Corp. v. GasRock Capital, LLC.*

**1.3.** "Allowed" means, with respect to any Claim (including any Administrative Claim), (a) a Claim against the Debtor, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules (i) as to which, no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, (ii) as to which no timely objection has been interposed based upon 11 U.S.C. § 502(d), and (iii) as to which an objection had been interposed, to the extent such Claim has been

allowed (whether in whole or in part) by a Final Order, (b) if no proof of such Claim was filed timely or was withdrawn, any Claim against the Debtor which is listed by the Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not disputed or contingent, (c) any Claim arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and allowed in accordance with § 502(b) of the Bankruptcy Code, (d) any Claim allowed under or pursuant to the terms of this Plan, or (e) any other Claim that has been allowed by a Final Order.

1.4. "Asset Pool" means that pool of cash or cash equivalents and other distributable assets of Rancher, e.g. stock, of Rancher, at all times net of (a) current accrued expenses and a reasonable reserve for future expenses to carry out this Plan as determined by the Board in its sole discretion, and (b) such amount, if any, as shall be determined by the Bankruptcy Court as necessary to adequately protect GasRock's right to compensation for its NPI and ORRI in the event Rancher's assets are or have been sold free of such interests.

1.5. "Asset Purchase Agreement" or "APA" means that certain definitive Agreement between Debtor and Linc Energy Petroleum (Wyoming), Inc. dated December__, 2010.

1.6. "Bankruptcy Case" means In Re: Rancher Energy Corp., Case Number 09-32943 MER.

1.7. "Bankruptcy Code" means Title 11 of the United States Code, as amended, in 0effect and applicable to the Bankruptcy Case concerning the Debtor.

1.8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.9. "Bar Date" means March 5, 2010, the date fixed by the Bankruptcy Court as the last date by which Claimants could file proofs of claim, unless the Court set a different date by which a specific Claimant must file a proof of claim, in which case it means, for the specific Claimant, such different date set by the Court.

1.10. "Board" means the Board of Directors of Rancher, as constituted from time to time.

1.11. "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in Denver, Colorado are required or authorized by law to be closed.

1.12. "Cash" means legal tender of the United States, including amounts on deposit at financial institutions in checking accounts, money market accounts and the like.

1.13. "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, causes of action, liens, judgments, insurance coverage claims, and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including but not limited to all causes of action pursuant to §§ 544 through 553 of the Bankruptcy Code.

  **1.14.** "Claim" means: (a) right to payment from either Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. "Claim" shall not include unmatured or unearned interest as of the Petition Date on the amount of any Claim except as permitted by the Bankruptcy Code or except as expressly provided otherwise in this Plan.

  **1.15.** "Claimant" means the holder of a Claim against the Debtor.

  **1.16.** "Class" means a category of Claims or Interests described in Article 3 hereof.

  **1.17.** "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Bankruptcy Case.

  **1.18.** "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to § 1129 of the Bankruptcy Code.

  **1.19.** "Court" means the United States Bankruptcy Court for the District of Colorado.

  **1.20.** "Debtor" means Rancher Energy Corp., debtor in possession in the Bankruptcy Case.

  **1.21.** "Disclosure Statement" means the disclosure statement and all exhibits thereto filed in this case pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as may be amended or modified from time to time by any duly authorized amendment or modification.

  **1.22.** "Disputed" means, as to a Claim: (a) if such Claim is not an Allowed Claim as of a particular point in time; (b) if no proof of claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law, (i) that is listed on the Debtor's Schedules as disputed, contingent or unliquidated, or (ii) that is not listed on the Debtor's Schedules; or (c) if a proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law, for which an objection, complaint or request for estimation has been filed by the Debtor or any other party in interest within 270 days after the Effective Date (or such later date the Bankruptcy Court allows upon motion by the Debtor), and such objection has not been withdrawn or denied in its entirety by Final Order.

  **1.23.** "Disputed Claims Reserve" means the segregated interest bearing accounts established by the Debtor consistent with Section 9.6 of this Plan.

  **1.24.** "Disputed GasRock Interests" means the Net Profits Interest asserted by GasRock Capital, Inc. under that certain Conveyance of Net Profits Interest dated June 3, 2009, and the Overriding Royalty Interest asserted by GasRock Capital, Inc. under that certain Conveyance of Overriding Royalty Interest dated June 3, 2009.

**1.25.** "Distribution" means any distribution to a Class made pursuant to this Plan.

**1.26.** "Effective Date" means the thirtieth (30th) day, or such earlier date specified by the Debtor by notice filed with the Bankruptcy Court if such day is a Business Day, and otherwise the first Business Day after such thirtieth (30th) day, after (a) the Confirmation Order (together with other orders entered in aid of Confirmation of this Plan, and signed contemporaneously with the Confirmation Order) has been entered pursuant to Bankruptcy Rules 5003 and/or 9021; and (b) all conditions precedent have been satisfied or waived as provided in Article 8 hereof.

**1.27.** "Estate" means the Debtor's estate created pursuant to § 541 of the Bankruptcy Code upon the Petition Date.

**1.28.** "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided that if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.29.** "GasRock" means GasRock Capital LLC.

**1.30.** "General Unsecured Claim" means any Claim against either of the Debtor that is not an Administrative Claim, Priority Unsecured Tax Claim, Priority Non-Tax Claim, Professional Fee Claim or Secured Claim.

**1.31.** "Interest" means the rights and interests of a holder of stock in the Debtor.

**1.32.** "Linc" means Linc Energy Petroleum (Wyoming), Inc., a Delaware corporation, or its assigns.

**1.33.** "Linc DIP Loan" means that certain debtor-in-possession loan made by Linc to the Debtor when and if approved by the Bankruptcy Court.

**1.34.** "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.35.** "Petition Date" means October 28, 2009, the date upon which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.36.** "Plan" means this plan of reorganization, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.37. "Priority Non-Tax Claim" means a Claim which is entitled to priority treatment under § 507(a) of the Bankruptcy Code, excluding Claims entitled to priority under Bankruptcy Code §§ 507(a)(1) and 507(a)(8).

1.38. "Priority Unsecured Tax Claim" means a Claim or a portion of a Claim which is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.39. "Professional Fee Claim" means any Claim of a Professional retained in the Bankruptcy Case pursuant to §§ 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to §§ 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.40. "Professional" means a professional person duly retained by the Debtor during the Bankruptcy Case pursuant to an order of the Court authorizing same.

1.41. "Pro Rata" means, in connection with a particular Allowed Claim and in connection with any Distribution, the ratio between the amount of such Allowed Claim and the aggregate amount of all Allowed Claims in such Class entitled to such Distribution.

1.42. "Record Date" means the date set by the Court pursuant to motion that will be at least ten days prior to the deadline for mailing this Plan to Interest holders for purposes of voting.

1.43. "Scheduled Claim" means a Claim that is listed by the Debtor in the Schedules.

1.44. "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

1.45. "Secured Claim" means a Claim secured by a lien, as that term is defined in § 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at § 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed, of such Claimant's interest in the Debtor's interest in such property.

**B. Rules of Interpretation**

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any references in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in this Plan, any reference in this Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) unless

otherwise specified herein, any reference to a Claimant or Interest holder includes that Person's successors, assigns and affiliates; (e) unless otherwise specified, all references in this Plan to Sections and Articles are references to Sections and Articles of this Plan; (f) the words "herein", "hereto" and "hereof" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose; and (g) the rules of construction set forth in § 102 of the Bankruptcy Code will apply. To the extent that this Plan is inconsistent with the Disclosure Statement, the provisions of this Plan shall be controlling.

# ARTICLE 2
## PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

**2.2. Claims Not Classified.** No Class is designated for Administrative Claims, Professional Fee Claims or Priority Unsecured Tax Claims.

**2.3. Administrative Claims.** The Debtor shall pay all Allowed Administrative Claims, other than Professional Fee Claims, at Debtor's sole option in Cash, (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order Allowing any such Administrative Claim, or (b) as such Claims may be due according to their terms in the ordinary course, or (c) as may be agreed upon between an Administrative Claim Claimant and the Debtor. In the event any Disputed Administrative Claims exist on the Effective Date, the Debtor shall at all times hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Administrative Claims.

**2.4. Professional Fee Claims.** Except as a Claimant with a Professional Fee Claim agrees otherwise, the Debtor shall pay all Professional Fee Claims on or before ten (10) Business Days after a Final Order approving such compensation and reimbursement of expenses in accordance with Section 5.5 hereof. Except as a Claimant with a Professional Fee Claim agrees otherwise, in the event any Disputed Professional Fee Claim exists on the Effective Date, the Debtor shall at all times hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to Disputed Professional Fee Claims.

# ARTICLE 3
## CLASSIFICATION AND VOTING OF CLAIMS AND INTERESTS

**3.1. Criterion of Class.** A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.

**3.2. Class Categories.** The following classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code, which classes shall be : mutually exclusive:

| CLASS | CLAIM | VOTING |
|---|---|---|
| Class 1 | Pre-Petition Ad Valorem Tax | Unimpaired/Not Entitled to Vote |

6

|           | Claims –Secured                                 |                            |
|-----------|-------------------------------------------------|----------------------------|
| Class 2   | Secured Claim of GasRock                        | Impaired/Entitled to Vote  |
| Class 3   | Priority Wage Claims                            | Impaired/Entitled to Vote  |
| Class 4(a)| Wyoming State Dept. of Revenue - Unsecured      | Impaired/Entitled to Vote  |
| Class 4(b)| IRS Pre-Petition Tax Claims – Unsecured         | Impaired/Entitled to Vote  |
| Class 4(c)| All Other Pre-Petition Tax Claims - Unsecured   | Impaired/Entitled to Vote  |
| Class 5(a)| General Unsecured Claims                        | Impaired/Entitled to Vote  |
| Class 5(b)| BLM Unsecured Claim                             | Impaired/Entitled to Vote  |
| Class 6   | Interests (common shareholders)                 | Impaired/Entitled to Vote  |
| Class 7   | Interests (holders of options and warrants)     | Impaired/Entitled to Vote  |
| Class 8   | Employee/Retention Agreement Stock Options      | Unimpaired/ Deemed to Accept |
| Class 9   | Convertible Promissory Notes                    | Impaired/Entitled to Vote  |

**3.3. Voting of Claims.** Each Claimant with an Allowed Claim as of the last date set by the Court on which a vote must be received in Classes 2, 3, 4, 5, 6, 7, and 9 shall be entitled to vote to accept or reject this Plan.

**3.4. Presumed Acceptances of Plan.** Classes 1 and 8 are unimpaired under this Plan and therefore are presumed to have accepted this Plan.

# ARTICLE 4
# TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by Claimants of Allowed Claims and Allowed Interests pursuant to this Plan shall be in full settlement, release and discharge of such Allowed Claims and Allowed Interests.

**4.1 Class 1 (Ad Valorem Claims- Secured Tax Claims).** Class 1 consists of the Allowed Ad Valorem Tax Claims of Converse County, Wyoming, if any, remaining unpaid at the time of Plan confirmation. Within 10 days of the date on which the Asset Pool contains at least $50,000, the Class 1 Claim shall be paid from the Asset Pool monthly from time to time to the extent the Asset Pool contains at least $10,000 until paid in full with interest. The Class 1 Claims shall accrue interest at the rate specified by applicable Wyoming law until paid in full or the Asset Pool is exhausted, whichever occurs first.

**4.2 Class 2 (GasRock).** Class 2 consists of the (a) Allowed Secured Claim of GasRock pursuant to the October 16, 2007 Term Note originally payable to GasRock in the original principal amount of $12,240,000.00, as amended, and related loan documents and (b) GasRock's

7

Allowed Claim for the Disputed GasRock Interests. The Class 2 Claimant, if not sooner paid, shall be paid monthly from time to time after payment of the Class 1 Claim to the extent the Asset Pool contains at least $1000.

    **4.3   Class 3 (Priority Wage Claims).** Class 3 shall consist of all Allowed Claims entitled to priority under § 507(a)(2) of the Code. Class 3 Claims shall be paid their Pro Rata share of the Asset Pool monthly from time to time to the extent the Asset Pool contains at least $1000, after payment of Administrative Claims, Professional Fee Claims, and Classes 1 and 2. Any Allowed Claim held by a Class 4 Claimant in excess of the amount entitled to priority under § 507(a)(2) of the Code shall be treated as Class 5(a) Claim.

    **4.4   Class 4 (Unsecured Priority Tax Claims)**

        A. **Class 4(a) (Wyoming Department of Revenue)** Class 4(a) consists of the Allowed Claim of the State of Wyoming Department of Revenue for taxes entitled to priority under §507(a)(8) of the Code. The Class 4(a) Claim shall accrue from the Petition Date at the rate specified by applicable Wyoming law and shall be paid its Pro Rata share with all Class 4 Claims of the Asset Pool.

        B. **Class 4(b) (Internal Revenue Service)** Class 4(b) consists of the Allowed Claims of the Internal Revenue Service for taxes entitled to priority under §507(a)(8) of the Code. The Class 4(b) Claims shall accrue from the Petition Date at the rate specified in §6621(a)(2) of the Internal Revenue Code in effect on the Effective Date for any Allowed Claim of the Internal Revenue Service. The Class 4(b) Claims shall be paid their Pro Rata share with all Class 4 Claims, of the Asset Pool.

        C. **Class 4(c) (Other Tax Claims)** Class 4(c) consists of any Allowed Claims for taxes entitled to priority under §507(a)(8) of the Code not included in Classes 4(a) and 4(b). The Class 4(c) Claims shall accrue from the Petition Date at the rate specified in applicable law and shall be paid their Pro Rata share with all Class 4 Claims of the Asset Pool.

        D. **Asset Pool Minimum**  Class 4 shall be paid monthly from time to time to the extent the Asset Pool contains at least $1000 after payment of Administrative Claims, Professional Fee Claims, and Classes 1, 2, and 3.

    **4.5   Class 5(a) (General Unsecured Claims).** Class 5(a) shall consist of Allowed General Unsecured Claims not otherwise specifically classified under this Plan. The Class 5(a) Claims shall be paid shall be paid their Pro Rata share of the Asset Pool monthly from time to time to the extent the Asset Pool contains at least $1000 after payment in full of Administrative Claims, Professional Fee Claims, and Classes 1, 2, 3, and 4. The Class 5(a) Claims shall not accrue interest.

    **4.6 Class 5(b) (BLM Allowed Unsecured Claim).** Class 5(b) shall consist of the Allowed General Unsecured Claim of the BLM for plugging and reclamation liability and other claimed

amounts. The Class 5(b) Claim shall be satisfied by Rancher's remediation and other well workovers as required by the BLM pursuant to the schedule attached hereto as Plan Exhibit A and otherwise as required by the BLM of any owner of affected properties and applicable law and regulation in the ordinary course. Debtor's Performance Bond posted by Rancher for the benefit of the BLM in the current amount of $25,000.00 shall remain in place unless assigned to, or until it is replaced by a new bond posted by, the purchaser of assets.

**4.7 Class 6 (Shareholder Interests)** Class 6 shall consist of (a) all common stock Interests in the Debtor on the Effective Date, and (b) the holders of any Allowed Claims subject to subordination under § 510(b) of the Code. Allowed Class 6 holders shall receive 1 new share in Rancher for every 15 shares currently held, thus effectuating a 15 for 1 reverse stock split (the "Reverse Split Ratio").

**4.8 Class 7 (Warrants)** Class 7 shall consist of all holders of warrants as shown on the Stock and Transfer records of Rancher as of the Record Date. All such warrants shall be cancelled and each Class 7 Claimant shall receive shares of the Debtor's common stock based on the following formula: one share of pre-reverse split common stock for every 100 shares of pre-reverse split common stock to which such Claimant would be otherwise entitled upon exercise of the warrants, divided by the Reverse Split Ratio. For purposes of illustration, the holder of warrants that would have entitled a Class 7 Claimant, upon exercise thereof, to 1500 shares, will receive one share of post-reverse split common stock (1500 divided by 100 divided by 15). The resulting Class 7 shareholders shall then be treated as Class 6 Interest holders.

**4.9 Class 8 (Employee Stock Options)** Class 8 shall consist of Allowed Claims for stock options vested as of the Record Date as the result of management retention agreements or employee stock option agreements. Such options shall remain unimpaired.

**4.10 Class 9 (Convertible Note Holders)** Class 9 shall consist of Allowed Claims pursuant to Convertible Promissory Notes dated October 27, 2009. Each holder of such Notes shall retain the right to convert the Convertible Promissory Note to shares of common stock pursuant to the terms thereof, provided that (a) conversion shall be at the conversion price provided in the Convertible Promissory Note adjusted for the reverse split described in Section 4.6 of this Plan regarding the treatment of Class 6 Interests, and (b) such election is made on within 10 days of the Effective Date. To the extent such holders do not elect to exercise their conversion rights, the Allowed Class 11 Claims shall be treated as Class 5(a) Claims.

**4.11 Linc (DIP Loan Claim)** Nothing in this Plan shall affect the rights of Linc as the provider of the Linc DIP Loan.

# ARTICLE 5
# MEANS OF IMPLEMENTATION OF THIS PLAN

**5.1. Vesting of Assets.** On the Effective Date, all property of the Debtor's Estate shall vest in the Debtor, free and clear of all claims and interests except as specifically set forth in this Plan.

**5.2** **Debtor in Possession Funding and Asset Sale**. Debtor anticipates the closing of Linc DIP Loan and the sale of substantially all of the Debtor's assets to Linc prior to the Effective Date. In that event, (a) Class 1 will be paid in full, (b) Class 2 will have received all but the Allowed Claim, if any, for the Disputed Interests, (c) the Linc DIP Loan will have been satisfied, and (d) the remaining proceeds will be available for Distributions as required under this Plan. In the event for any reason the Linc Sale does not occur, the Debtor will proceed to sell its assets in one or more lots pursuant to § 363 of the Code by motion made prior to the Effective Date.

**5.2** **Adversary Proceeding.** The Debtor will continue to litigate the Adversary Proceeding, subject to, if applicable, the Litigation Agreement with Linc dated December __, 2010 and approved by the Bankruptcy Court by Order dated _____ (to be entered).

**5.3** **Amended Articles.** To implement the terms of this Plan, the Debtor's Articles of Incorporation shall be deemed amended as set forth in Plan Exhibit B hereto. Among other things, the Board shall have the authority to determine whether the Debtor will continue in business or wind up its affairs.

**5.4** **Stock Incentive Plan Termination.** The Debtor's 2006 Stock Incentive Plan will be deemed terminated as of the Effective Date.

**5.5** **Preservation of Causes of Action**. Unless expressly waived or relinquished, released, compromised or settled in this Plan, or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan: (a) the Debtor shall exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes in accordance with §§ 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that its Estate may hold or have held prior to Confirmation against any Person, including but not limited to the Adversary Proceeding; and (b) no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with Confirmation, consummation or effectiveness of this Plan.

**5.6** **Single Claim Rule.** With respect to each Class of Claims, a Claimant shall be deemed to hold only a single claim in such Class, regardless of how many separate Claims the Debtor has scheduled or the Claimant has filed. If any Claim or any portion of the Claim in a particular Class is disputed, no distribution shall be made with respect to such Claim until all or a portion of the Claim is Allowed and the remainder, if any, is determined to be not Allowed by Final Order.

**5.7** **Deadline for Filing Professional Fee Applications.** All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court and serve upon the Debtor, a final application on or before the first Business Day which is the sixtieth (60th) day after the Effective Date. Failure to timely file and serve such application shall act as a bar against the assertion of any such right to payment. The Debtor shall mail Notice of the Effective Date and the foregoing deadline not later than ten (10) calendar days after the Effective

Date.

**5.8    Execution of Documents to Effectuate Plan.** Prior to the Effective Date, the Debtor shall execute any instruments or documents that are necessary to effectuate the provisions of this Plan. Claimants with Secured Claims and all other necessary parties shall execute or deliver, or join in the execution and delivery, of any instrument required to effect a transfer of property under this Plan, and shall perform any other act, including the satisfaction, release or assignment of any lien that is reasonable or necessary for the consummation of this Plan. From and after the Effective Date, the Debtor shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of this Plan. The Debtor may require surrender of the original warrants or options in exchange for the stock to be issued hereunder or implement such other reasonable procedures with respect to the issuance of new stock as contemplated under this Plan. The Debtor, through its Board of Directors shall have the authority to amend the Debtor's Articles, By-Laws or other corporate documents as may be necessary to implement this Plan, including but not limited to increasing or decreasing the number of Directors, implementing the reverse stock split, converting the Debtor to a private company, or winding up and dissolving the Debtor once the Asset Pool has been exhausted.

**5.9    Disallowance of Claims without Further Order of the Court.** As of the Confirmation Date, any Scheduled Claim designated as disputed, contingent, unknown in amount or unliquidated in amount, and for which the Claimant has not filed a proof of Claim, shall be deemed expunged, without further act or deed. All Scheduled Claims that correspond to a proof of Claim filed by a particular Claimant shall be deemed to have been superseded by such later filed proof of Claim.

**5.10    Post-Confirmation Reports and Fees.**  The Debtor shall be responsible for the filing of all post-Confirmation reports with the U.S. Trustee and payment of all post-Confirmation fees charged or assessed under 28 U.S.C. § 1930 until the Debtor's Chapter 11 case is closed. Any outstanding quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) payable as of the Effective Date shall be paid in full on or before the Effective Date.

**5.11    Asset Pool Termination.** The Asset Pool shall terminate upon the earlier of (1) the payment in full of  Classes 1 through 5 or (2) the exhaustion of the Debtor's assets below the amounts necessary to wind up and dissolve the Debtor.

**ARTICLE 6**
**TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES**

**6.1.    Executory Contracts and Leases.** All executory contracts and unexpired leases of the Debtor are hereby deemed assumed as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, (ii) is the subject of a pending motion to reject such contract or lease filed by the Debtor, or (iii) is otherwise specifically addressed in this Plan. The amount necessary to cure any default proposed under this Plan shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

**6.2 Unitization Agreements, Unit Operating Agreements, Wyoming Oil and Gas Commission Rulings and Orders.** All unit agreements and related unit operating agreements are not executory contracts within the meaning of § 365 of the Code. To the extent the Debtor is the owner of the properties subject to the Unit Agreements and Unit Operating Agreements, the same shall remain unimpaired.

**6.3 Office Lease.** To the extent the Debtor still occupies the premises at Suite 3400, 999 18th Street, Denver Colorado pursuant to the Stipulation between Debtor and LBA Realty Fund III – Company III, LLC (Docket #84) as of the Effective Date, the terms of such occupancy shall be pursuant to paragraph 9 of such Stipulation unless otherwise agreed in writing between the parties which the clarification that LBA and the Debtor have agreed that LBA will have no claim for post-petition administrative rent above $5,000 per month in the event the Debtor fails to pay its $5,000 post-petition monthly rental fee.

**6.4 Rejection Claim Bar Date.** No more than ten (10) Business Days following the Confirmation Date, the Debtor shall provide notice to all known parties to any executory contract or unexpired lease deemed rejected under this Article and not previously rejected of their right to file proofs of Claim relating thereto. Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages resulting from such rejection not later than thirty (30) days after the date of such notice was mailed. The failure to timely file a proof of Claim shall be deemed a waiver of any claim in connection with the rejection of such contract or lease.

## ARTICLE 7
## CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE DATE

**7.1. Conditions Precedent to Confirmation of this Plan.** Unless this condition is waived in accordance with Section 7.3, the Confirmation Order shall, among other things:

A. Authorize the implementation of this Plan in accordance with its terms.

B. Provide that any transfers effected or mortgages or other security documents entered into or to be effected or entered into under this Plan shall be and are exempt from any state, city, or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar taxes pursuant to § 1146(c) of the Bankruptcy Code.

C. Approve in all respects the other settlements, transactions, and agreements to be effected pursuant to this Plan.

**7.2. Conditions Precedent to the Effective Date.** The Effective Date shall not occur and no obligations and rights set forth in this Plan and set to occur as of the Effective Date or thereafter shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof on or before the Effective Date:

A. The Confirmation Order shall have been entered and become a Final Order.

**7.3. Waiver of Conditions Precedent.** Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified, in whole or in part, but only by the Debtor. Any such waiver or modification of a condition precedent in Sections 7.1 or 7.2 hereof may be effected at any time upon filing a notice thereof with the Bankruptcy Court, without leave or order of the Bankruptcy Court and without any other formal action.

## ARTICLE 8
## EXCULPATION

The Debtor and its respective officers, employees and professionals retained pursuant to § 327 of the Bankruptcy Code (acting in such capacity) shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for acts or omissions as a result of willful misconduct or gross negligence.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

**9.1. Distributions Only on Business Days.** Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, such Distribution shall instead be due on the next Business Day.

**9.2. Unclaimed Distributions.** Any Distributions (i) by checks which have been returned as undeliverable without a proper forwarding address and the Claimant fails to notify the Debtor in writing within 90 days of a proper address, and (ii) by checks which have not been negotiated within 90 days of issuance and the Claimant has not notified the Debtor in writing to stop payment and reissue the check, shall be deemed forfeited and the Claimant with such Claim shall be removed from the Distribution schedules and shall receive no further Distributions under this Plan. Any such Distributions shall become property of the Debtor.

**9.3. Disputed Distribution.** If any dispute arises as to the identity of a Claimant with an Allowed Claim who is to receive any distribution, the Debtor may, in lieu of making such distribution to such Claimant, make such distribution into a segregated account until the disposition shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**9.4. Transmittal of Payments and Notices.** All Distributions shall be made to a Claimant by regular first-class mail, postage prepaid, in an envelope addressed to such Claimant at the address listed on its proof of Claim filed with the Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed by the Debtor on the Schedules, (ii) as the Claimant may direct in writing, or (iii) otherwise at such Claimant's last known address. Debtor shall take reasonable steps to ascertain the most current address of the Claimant whose distribution check is returned as undeliverable prior to treating such check as an Unclaimed Distribution. The date of payment or delivery shall be the date of mailing. Distributions made in

accordance with the aforementioned provisions of this Section will be deemed made to the Claimant regardless of whether such Claimant actually receives the Distribution.

**9.5.    Record Date for Distributions.** A transferee of a Claim will be treated as the holder of the Claim for purposes of Distributions and otherwise, provided written notice of the transfer signed by the original Claimant is delivered to the Debtor and compliance with Bankruptcy Rule 3001, if applicable, is completed, at least ten (10) days prior to the next proposed Distribution. Absent such notice, in making any Distribution, the Debtor shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of Claim filed with respect thereto or on the Debtor's Schedules as the holder thereof as of the close of business on the Confirmation Date and upon such other evidence or record of transfer or assignment known by such Persons as of the Confirmation Date. No amendments to Claims shall be permitted after the Effective Date.

**9.6.    Disputed Claims Reserve.** Except to the extent the Court determines that a lesser amount is adequate, the Debtor shall, with each Distribution, deposit into one or more separate interest-bearing Disputed Claims Reserve accounts established by the Debtor and that meet the requirements of § 345 of the Bankruptcy Code, Cash equal to the Distributions that would have been made to Claimants with Disputed Claims if such Claims were Allowed Claims in their full amounts. When a Disputed Claim becomes an Allowed Claim, the Debtor shall distribute to the Claimant with such Allowed Claim, as soon as practicable and in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such Claimant would be entitled to if such Claimant's Claim were Allowed on the Effective Date. In no event shall the Debtor be responsible or liable for any loss to or of any amount reserved under this Plan unless such loss is the result of the Debtor's fraud or willful misconduct.

**9.7.    No De Minimis Distributions.** The Debtor shall not be required to make any distribution with regard to any Claim if the amount of the Distribution to that Claimant would be less than $10.00.

**9.8.    Setoff and Recoupment.** Except as otherwise provided in this Plan, the Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to this Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor may have, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment against the Claimant with any Claim.

**9.9.    Payment of Taxes on Distributions Received Pursuant to this Plan.** All Entities that receive Distribution under this Plan shall be responsible for reporting and paying, as applicable, taxes on account of their Distributions.

**9.10.    Compliance with Tax Withholding and Reporting Requirements.** With respect to all instruments issued and distributions made under this Plan, the Debtor will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

# ARTICLE 10
# PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1. Withdrawal and Modification of Plan.** The Debtor may withdraw or modify this Plan at any time prior to the Confirmation Date. The Debtor may modify this Plan in any manner consistent with § 1127 of the Bankruptcy Code prior to substantial consummation thereof. Upon request by the Debtor, this Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**10.2. Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) with respect to matters of corporate governance, the laws of the State of Colorado applicable to contracts executed in such State by residents thereof and to be performed entirely within such State will govern the construction and implementation of this Plan and any agreements, documents and instruments executed in connection with this Plan.

**10.3. Cram Down.** The Debtor requests that, in the event that any impaired Class entitled to vote on this Plan does not accept this Plan, the Bankruptcy Court confirm this Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

# ARTICLE 11
# RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1.** From the Confirmation Date until entry of a final decree closing the Debtor's Bankruptcy Case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Bankruptcy Case for the following purposes:

    A.   to hear and determine any and all objections to the allowance of any Claim or Administrative Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Claimants, or other parties in interest;

    B.   to hear and determine any and all applications for compensation and reimbursement of expenses by professionals retained pursuant to § 327 of the Bankruptcy Code;

    C.   to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to Allow or disallow any Claims resulting therefrom;

    D.   to adjudicate such contested matters and adversary proceedings, including the Adversary Proceeding, as may be pending or subsequently initiated in the Court;

    E.   to enforce and interpret the provisions of this Plan and the Confirmation Order;

    F.   to issue any injunction or other relief appropriate to implement the intent of this

Plan, and to enter such further orders enforcing any injunctions or other relief issued under this Plan or pursuant to the Confirmation Order;

G. to modify this Plan pursuant to § 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

H. to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of this Plan;

I. to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code; and

J. to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

Dated: December 13, 2010.

**Debtor and Debtor in Possession**
**Rancher Energy Corp.,**

By: /s/ Jon Nicolaysen
Its: CEO & President

**Onsager, Staelin & Guyerson, LLC**

/s/ Christian C. Onsager
Christian C. Onsager, CBN 6889

/s/ Michael J. Guyerson
Michael J. Guyerson , CBN 11279
1873 S. Bellaire St., Suite 1401
Denver, Colorado 80222
Ph: (303) 512-1123
Fax: (303) 512-1129
consager@osglaw.com
mguyerson@osglaw.com
*Counsel for the Debtor*

## PLAN EXHIBIT A

**Short Term Mitigation Plan:**

**Completed Items 2010:**

I. The local Bureau of Land Management District Office requested that Rancher plug and abandon East Big Muddy well # W – 1. This well was plugged and abandoned according to BLM and Wyoming State Oil and Gas Commission regulations.

II. Rancher Energy completed the abandonment of three locations located on BLM lease number WYW 0249 in the summer of 2010 as a part of addressing items set forth in the BLM Claim. These wells are South Glenrock B Unit # 184, 188, and 189.

**Partial Projected Work 2011**

I. Rancher Energy will finish the abandonment and surface reclamation of a South Glenrock A Unit Well # 19, which is located on BLM Lease WYW – 610 no later than May of 2011. This well was plugged previously, but the surface reclamation has not been finished as of this date and the bond for surface reclamation has not been released.

II. Rancher Energy currently plans to lay a pipeline from the South Glenrock A Unit tank battery to South Glenrock A Unit Well # W – 4. Rancher plans to do the permitting for the pipeline during the 4th quarter of 2010. It is anticipated that after the right of Way permit is received, the well can be reactivated in the 2nd quarter of 2011. This well will change from temporarily abandoned to an active water injection status. Scheduling is subject to change.

**PLAN EXHIBIT B**
[to be appended upon approval of the Disclosure Statement]